UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
CLAUDETTE AMPARO,                                        Civil Action No.: 13CV7232 (LGS)

                         *Plaintiff,*

       -against-                                                       DEFENDANTS' NOTICE OF
                                                                            MOTION AND MOTION FOR
                                                                              SUMMARY JUDGMENT

INK POINT TATTOO AND BODY PIERCING, INC.,
d/b/a INK POINT STUDIOS; and PETER SANTACRUZ;
jointly and severally.

                                              *Defendants*.
-------------------------------------------------------------------------x

      NOTICE IS HEREBY GIVEN that, upon Defendants' and CounterClaimant's Ink Point Tattoo and Body Piercing, Inc., D/B/A Ink Point Studios and Peter Santacruz ("Defendants") (i) Rule 56.1 Statement of Undisputed Facts, (ii) Memorandum of Law in Support of Motion for Summary Judgment, (iii) Affirmation of Wayne S. Kreger, Esq. (and exhibits attached thereto) and (iv) all the pleadings and proceedings herein, Defendants hereby move this Court, at such date and time as the Court may direct, for an Order Granting Summary Judgment as to Count I of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 56(c), 29 U.S.C. §§ 203(b) & 206(a) and 28 U.S.C. § 1367(a). This Motion is permitted by the Court following the pre-motion conference held on June 10, 2014.

Dated: July 14, 2014                 THE LAW OFFICES OF WAYNE KREGER

                                          By:_____/S/_____
                                            Wayne S. Kreger, Esq.
                                            Law Offices of Wayne Kreger
                                            SDNY Bar No.: WK2868
                                            303 Fifth Avenue, Suite 1201
                                            New York, New York 10016
                                            Phone: (212) 956-2136
                                            Fax:   (212) 956-2137
                                            E-Mail: wayne@kregerlaw.com

# **TABLE OF CONTENTS**

                                                                                                 **Page**

I. PRELIMINARY STATMENT……………………………………….  1

II. RELEVANT UNDISPUTED FACTS…………………………………. 1

III. LEGAL STANDARD FOR SUMMARY JUDGMENT………………..  3

IV. PLAINTIFF CANNOT ESTABLISH JURIDICTION UNDER THE FLSA BECAUSE DEFENDANTS NEVER EMPLOYED ANYONE ENGAGED IN INTERSTATE COMMERCE OR IN THE PRODUCTION OF GOODS FOR INTERSTATE COMMERCE, PLAINTIFF WAS NOT SO EMPLOYED, AND DEFENDANTS NEVER MADE MORE THAN $500,000……………  4

   A.  Plaintiff Cannot Establish Individual Coverage Under the FLSA Because She Never Performed Work Related to the Movement of Things Between States…………………………………………………. 5

   B.  Plaintiff Cannot Establish Enterprise Coverage Under the FLSA Because She was Defendants' Only Employee and Defendants' Business(es) Never Approached the $500,000 Threshold Required by the Statute.…………….…………………………………….. 7

V. PLAINTIFF'S NYLL CAUSE OF ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE WITHOUT THE FLSA OVERTIME CAUSE OF ACTION, THERE IS NO COMMON NUCLEUS OF OPERATIVE FACT TO JUSTIFY THE EXERCISE OF SUPPLEMENTAL JURISDICTION……………………………………………………  9

VI. CONCLUSION…………………………………………….………… 11

# TABLE OF AUTHORITIES

**CASES:** Page

*Achtman v. Kirby, Mcinerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)……... 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)…………………………... 3

*Archie v. Grand Central P'ship., Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998)……... 5

*Boekemeier v. Fourth Universalist Soc'y in City of New York,*
    86 F. Supp.2d 280, (S.D. N.Y. 2000)…………………………………………... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………… 3

*City of New Rochelle v. Town of Mamaroneck,*
    111 F. Supp. 2d 353 (S.D.N.Y. 2000)…………………………………………… 10

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003)……………………….. 10

*Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697 (2d Cir. 2000)…….. 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) … 3

*Miller v. Lovett*, 879 F.2d 1066 (2d Cir.1989)…………………………………….. 10

*Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171 (2d Cir.2003). 3

*Nichols v. Mahoney,* 608 F. Supp.2d 526 (S.D.N.Y.2009)……………………….. 5,6

*Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp.2d 114 (E.D.N.Y.2011)……. 4

*Scott v. Harris*, 127 S. Ct. 1769 (2007)……………………………………….. 3

*Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290 (1985)…………. 4

*Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 572 (1943)………………….. 7

**United States Constitution**

Article III………………………………………………………………………. 10

**Federal Statutes:**

28 U.S.C. § 1367(a)………………………………………………………………….. 10,11
Fair Labor Standards Act of 1938, 29 U.S.C. § 203(b)……………….............. 4

Fair Labor Standards Act of 1938, 29 U.S.C. § 203(s)(1)(A)………….................   5,7
Fair Labor Standards Act of 1938, 29 U.S.C. § 203(s)(1)(A)(ii)..………...............   7,8
Fair Labor Standards Act of 1938, 29 U.S.C. § 206(a)……………….................   4

**Federal Rules of Civil Procedure:**

Federal Rules of Civil Procedure Rule 56(c)…………………………………….   3,11
Federal Rules of Civil Procedure Rule 56(e)……………………………………..   3

**Code of Federal Regulations:**

29 C.F.R. § 779.103……………………………………………………………   5

**MEMORANDUM OF LAW**

Defendants and CounterClaimants Ink Point Tattoo and Body Piercing, Inc., D/B/A Ink Point Studios and Peter Santacruz ("Defendants") submit their Memorandum of Law in support of the Motion for Summary Judgment, Statement of Undisputed Material Facts, Affirmation of Wayne S. Kreger, Esq. and Admissible Evidence as follows:

## I. PRELIMINARY STATEMENT

The simple issue raised by Defendants' Motion for Summary Judgment is whether Plaintiff Claudette Amparo's ("Plaintiff") First Cause of Action for Violation of the FLSA fails as a matter of law because Defendants' business never earned anywhere close to the requisite $500,000 during Plaintiff's employment and it never employed more than one employee (Plaintiff) during that time, or ever. Since the undisputed facts clearly lead to no other conclusion, Defendants' Motion must be granted, and the First Cause of Action in Plaintiff's Complaint must be dismissed. Thereafter, Plaintiff's Second Cause of Action for NYLL claims must be remanded to state court for lack of subject matter jurisdiction.

## II. RELEVANT UNDISPUTED FACTS

Plaintiff was employed by Defendants at Ink Point Studios located at 373 Audubon Avenue, New York, New York between approximately April 23, 2010, to July 11, 2013. **Undisputed Material Fact No. 1** ("**UMF**"). Plaintiff's job duties at Ink Point were limited to piercing, sales, maintaining and cleaning the store, opening and closing, customer service and social media. **UMF #2**. Plaintiff did not work for or have any involvement with Defendants' other business, Piercemania. **UMF #3**. During the entirety of Plaintiff's employment with Defendants, she admits that she was the single and only

1

employee that ever worked at Ink Point Studios. **UMF #4**. Likewise, Plaintiff also acknowledged that Piercemania has never had a single employee. **UMF #5**.

Ink Point's earnings have always been dismal: in its first year of existence in 2010, the business submitted tax returns showing gross earnings in the amount of just $2,158.00; in 2011 the gross earnings were $19,851.00; in 2012 the gross earnings were $19,710; and in 2013 the gross earnings were $18,892.00. **UMF #6**. Piercemania's earnings were likewise well beneath the $500,000 threshold: in 2010, the business submitted tax returns showing gross earnings in the amount of $53,270; in 2011 the gross earnings were $33,750; in 2012 the gross earnings were $34,980; and in 2013 the gross earnings were $57,630. **UMF #7**.

The Santacruz's personal tax returns reveal similar overall earnings between both spouses; in fact, Peter Santacruz acknowledged in his deposition that he was being supported by his wife who earned between $90,000 to $100,000 a year while he stayed at home and took care of their children. Even with his wife's salary, the Santacruz's have trouble making ends meet. **UMF #8**. In 2010, their adjusted gross income (including Ink Point and Piercemania) was $104,460; in 2011 their gross income was $106,373; and in 2012 their gross income was $117,889. **UMF #9**.

Accordingly, during the entirety of Plaintiff's employment with Ink Point, Ink Point reported gross earnings of just $60,611; Piercemania, for which Plaintiff never worked and which had no employees, reported gross earnings during that period of $179,630; the enterprise of the two, if so configured, reported gross earnings together

during that nearly 3 ½ year period of $240,241, less than half of what is required *annually* by the statute.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment shall be granted if the pleadings demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this showing is made, the nonmoving party may not rely solely on "[c]onclusory allegations, conjecture, and speculation," *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir.2003) (internal citations and quotation marks omitted), but must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. Fed. R. Civ. P.56(e). The Court should resolve all ambiguities in favor of the nonmovant "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (citing Fed. R. Civ. P. 56(c)).

///

///

///

## IV.

## PLAINTIFF CANNOT ESTABLISH JURISDICTION UNDER THE FLSA, BECAUSE DEFENDANTS NEVER EMPLOYED ANYONE ENGAGED IN INTERSTATE COMMERCE OR IN THE PRODUCTION OF GOODS FOR INTERSTATE COMMERCE, PLAINTIFF WAS NOT SO EMPLOYED, AND DEFENDANTS NEVER MADE MORE THAN $500,000.00.

Section 206(a) of the FLSA provides, in relevant part:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates… 29 U.S.C. § 206(a).

Simply put, the FLSA requires an employer to pay a certain minimum wage if that employee is either engaged in commerce of the production of goods for commerce or is employed in an enterprise engaged in commerce of the production of goods for commerce. Moreover, Section 203(b) defines "commerce" as follows: "Commerce" means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

There are two theories upon which a plaintiff can allege involvement in interstate activity: individual coverage and enterprise coverage. *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 n.8 (1985); *Rodriguez* v. *Almighty Cleaning, Inc.,* 784 F. Supp. 2d 114, 120 (E.D.N.Y.2011). "First, for an employee to qualify for individual

4

coverage under the FLSA, he must have personally 'perform[ed] work involving or related to the movement of persons or things ... between states.'" *Nichols* v. *Mahoney,* 608 F. Supp.2d 526, 547 (S.D.N.Y.2009) (quoting 29 C.F.R. § 779.103). Second, enterprise coverage exists if: (1) the enterprise's employee*s* handle products that moved through channels of interstate commerce and (2) the enterprise has gross annual sales or projected gross annual sales in excess of $500,000. 29 U.S.C. 203(s)(1)(A); *Archie* v. *Grand Central P'ship., Inc.,* 997 F. Supp. 504, 528-31 (S.D.N.Y. 1998).

### A.  Plaintiff Cannot Establish Individual Coverage Under the FLSA Because She Never Performed Work Related to the Movement of Things Between States

Plaintiff does not allege any facts indicating involvement in any interstate activity relating to her claim of FLSA overtime violations; her complaint details Plaintiff's limited role while in the employ of Defendants sole local tattoo salon in Manhattan: "the defendants employed the plaintiff as a piercing technician" [**UMF #2**] at Defendants' location on Audubon Avenue in New York [**UMF #1**].

In her deposition, Plaintiff also acknowledged that her job was devoid of any interstate activity whatsoever:

> 24 Q. What was your job title when you
> 25 started working there?
> * * *
> 2 A. I was a piercing -- piercing girl.
> 3 Q. I'm sorry?
> 4 A. Just did the piercing, and sales.
> 5 Q. Anything else?
> 6 A. Maintaining, cleaning the store.
> 7 Q. Cleaning the store?
> 8 A. Uh-huh, opening and closing, customer
> 9 service.
> 10 Q. Anything else?
> 11 A. That's it.

5

```
* * *
6 Q. And were those all always your job
7 duties from April 23, 2010 to July 11, 2013?
8 A. Yes.
9 Q. And did any of those cease to be your
10 responsibilities?
11 A. No.
12 Q. And did anything ever get added to that
13 list? Did you ever take on anything else besides
14 what you told me?
15 A. He made me check Facebook every day,
16 answer to questions on Facebook.
17 Q. Okay. So?
18 A. Posting pictures on Facebook.
19 Q. Okay. So call that social media?
20 A. Yeah.
21 Q. So the store had a Facebook page?
22 A. Yes.
23 Q. And you would put pictures of what,
24 like people's tattoos?
25 A. Uh-huh, yes.
* * *
10 Q. So I know everything that you were
11 responsible for the whole time you were there?
12 A. Yes.
13 Q. What was the address of the business
14 that you worked at?
15 A. 373 Audubon Avenue.
16 Q. Okay. And do you know the ZIP?
17 A. 10034.
```

[**UMF #1 &2**].

Plaintiff also confirmed that she did not work for Defendants' other business, Piercemania, which had no employees at all, ever, and that she had no involvement with its activities [**UMF #3-5**] and she likewise neither sued Piercemania nor made any allegations in her Complaint with respect to having performed any services for Piercemania whatsoever.

Plaintiff has failed to adequately allege individual coverage because there are no facts indicating that Plaintiff personally performed any work related to the movement of persons or things between states. *Nichols,* 608 F.Supp.2d at 547. Further, in addition to the requirement that the individual must be personally participating

in the actual movement of persons or things in interstate commerce, "[f]or an employee to be engaged in commerce, 'a *substantial part* of the employee's work must be related to interstate commerce." *Boekemeier v. Fourth Universalist Soc'y in City of New York,* 86 F. Supp.2d 280, 287 (S.D. N.Y. 2000) citing *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 572 (1943) [emphasis added].

B.  Plaintiff Cannot Establish Enterprise Coverage Under the FLSA Because She was Defendants' Only Employee and Defendants' Business(es) Never Approached the $500,000 Threshold Required by the Statute.

Under the second type of FLSA coverage — "enterprise coverage"— an employee is entitled to the federal minimum wage if she is employed by "an enterprise engaged in commerce," as defined by § 203(s) of the statute. Section 203(s) of the FLSA provides in relevant part that an "[e]nterprise engaged in commerce or in the production of goods for commerce" means an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or material that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated). 29 U.S.C. § 203(s)(1)(A)(ii).

7

Thus, in order for an enterprise to be "engaged in commerce," for purposes of enterprise coverage, a business must have *employees* handling goods or materials that have been moved in interstate commerce *and* must have annual gross volume of sales or business done in excess of $500,000. *See* 29 U.S.C. § 203(s)(1)(A)(ii).

Here it is uncontroverted that Defendants never employed more than one employee at Ink Point, which was Plaintiff, during the entirety of its existence. Plaintiff herself admitted as much in her deposition with no qualification:

> 24 Q. And then how many employees worked at
> 25 the Ink Point location on Audubon when you were
> * * *
> 2 there?
> 3 A. Only me.
> 4 Q. So you were the only employee?
> 5 A. Yes.
> [**UMF #4**]

Plaintiff also admitted that she never worked for Defendant's other business, Piercemania, which had no employees [**UMF #3-5**]. Accordingly, Plaintiff's FLSA claim fails under the first prong of Section 203 because the sum total of Defendants' employees even when considered an enterprise never exceed ONE at any time.

Second, the undisputed facts in this case show that Defendants' two businesses, even if included as an enterprise for purposes of this motion, earned far less than the $500,000 threshold in any one year during Plaintiff's employment with Defendants (in fact, the two businesses combined never reached even half of that annual threshold during Plaintiff's entire three-year employment with Defendants!). Defendants have produced to

8

Plaintiff all of their tax returns, bank statements, balance sheets and profit and loss statements for both businesses for the three years and Defendant testified under oath in his deposition that his businesses were barely afloat and that he is being supported by his wife [**UMF #6-9**].

During the entirety of Plaintiff's employment with Ink Point, Ink Point reported gross earnings of just $60,611; Piercemania, for which Plaintiff never worked and which had no employees, reported gross earnings during that period of $179,630; the enterprise of the two, if so configured, reported gross earnings together during that nearly 3 ½ year period of $240,241, less than half of what is required *annually* by the statute.

Therefore, since Plaintiff cannot establish enterprise coverage under the FLSA, Defendants request that this Court grant summary judgment in its favor as to the First Cause of Action for FLSA violations in the Complaint.

## V.

## **PLAINTIFF'S NYLL CAUSE OF ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE WITHOUT THE FLSA OVERTIME CAUSE OF ACTION, THERE IS NO COMMON NUCLEUS OF OPERATIVE FACT TO JUSTIFY THE EXERCISE OF SUPPLEMENTAL JURISDICTION.**

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form *part of the same*

*case or controversy* under Article III of the United States Constitution." 28 U.S.C. § 1367(a) [emphasis added]:

> [F]ederal courts have supplemental jurisdiction to hear claims arising under state law when: (1) there is a claim arising under the constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*City of New Rochelle* v. *Town of Mamaroneck,* 111 F. Supp. 2d 353, 369 (S.D.N.Y. 2000) (citing to *Miller* v. *Lovett,* 879 F.2d 1066, 1071 (2d Cir.1989)).

"In determining whether two disputes arise from a 'common nucleus of operative fact,' we have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court.'" *Achtman v. Kirby, Mcinerney & Squire, LLP,* 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Trust Co.* v. *Lussier,* 211 F.3d 697, 704 (2d Cir. 2000)). However, "[i]n most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed." *Lerner* v. *Fleet Bank, N.A.,* 318 F.3d 113, 130 (2d Cir. 2003); *see* 28 U.S.C. § 1367(c)(3).

The granting of Defendants' Summary Judgment as to the FLSA claims means Plaintiff no longer has a federal question claim before the Court. Likewise, diversity jurisdiction is unavailable because Plaintiffs and Defendant are both residents of New York.

## VI.

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that this Court enter an Order dismissing Plaintiff's First Cause of Action for FLSA overtime claims with prejudice pursuant to Fed. R. Civ. P. 56(c). In the alternative or in conjunction with Defendants' Fed. R. Civ. P. 56(c) Motion, Defendants respectfully request that this Honorable Court remand all New York Labor Law violations alleged by Plaintiff, for a lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a), along with any other or further relief this Court deems just and equitable.

Dated: July 14, 2014         **THE LAW OFFICES OF WAYNE KREGER**

By:_____/S/_____
Wayne S. Kreger, Esq.
Law Offices of Wayne Kreger
SDNY Bar No.: WK2868
303 Fifth Avenue, Suite 1201
New York, New York 10016
Phone: (212) 956-2136
Fax:    (212) 956-2137
E-Mail: wayne@kregerlaw.com