**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------------x

**CLAUDETTE AMPARO,**                                    Civil Action No.: 13CV7232 (LGS)

*Plaintiff,*

-*against-*                                              AFFIRMATION OF WAYNE S.
                                                         KREGER IN SUPPORT OF
                                                         DEFENDANTS' MOTION FOR
**INK POINT TATTOO AND BODY PIERCING, INC.,**            SUMMARY JUDGMENT
**d/b/a INK POINT STUDIOS; and PETER SANTACRUZ;**
**jointly and severally.**

*Defendants.*
--------------------------------------------------------------------x

I, WAYNE S. KREGER, am an attorney duly admitted to practice before the United

States District Court, Southern District and the State Bar of New York, and affirm the following

under penalties of perjury:

1.      I am an attorney at law duly licensed to practice in the United States District Court,

Southern District of New York; the State Bar of New York; all United States District Courts in

California; the United States Ninth Circuit Court of Appeals; the State Bar of California, the

District of Columbia Court of Appeals and the United States Supreme Court. I am the founder of

the Law Offices of Wayne Kreger, P.A., and I have been licensed to practice law for over 22

years. I have personal knowledge of the facts set forth in this Affirmation and, if called as a

witness, could and would testify competently to such facts under oath.

2.      Attached to this Affirmation as Exhibit "A" is a true and correct copy of the relevant

pages of the Deposition of Plaintiff Claudette Amparo, which I took personally on February 12,

2014 and which has been verified by Plaintiff per Stipulation between the Parties' counsel.

1

3.      Attached to this Affirmation as Exhibit "B" is a true and correct copy of the relevant pages of the Deposition of Defendant Peter Santacruz, which I personally attended on May 6, 2014 and which has been verified by Defendant on July 1, 2014.

4.      Attached as Exhibits "C", "D", "E" & "F" are Ink Point's tax returns for the years 2010, 2011, 2012 & 2013, respectively, which were provided to Plaintiff through verified discovery responses.

5.      Attached as Exhibits "G", "H", "I" & "J" are Piercemania's tax returns for the years 2010, 2011, 2012 & 2013, respectively, which were provided to Plaintiff through verified discovery responses.

6.      Attached as Exhibits "K", "L" & "M" are the Santacruz's personal tax returns for the years 2010, 2011 & 2012 respectively, which were provided to Plaintiff through verified discovery responses.

7.      Attached as Exhibit "N" is Peter Santacruz's verification of authenticity and veracity of his responses to Plaintiff's Request for Production of Documents concerning Exhibits "C' through "M".

I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct.

Dated: July 14, 2014

# EXHIBIT

# "A"

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------x

CLAUDETTE AMPARO,

                Plaintiff,

                Counter-defendant,


      v.                  13 CV 7232 (LGS)


INK POINT TATTOO AND BODY

PIERCING, INC., d/b/a INK

POINT STUDIOS; and PETER

SANTACRUZ; jointly and

severally,


                Defendants.

                Counter-claimants.

--------------------------------x


                        February 12, 2014

                        10:11 a.m.


        Deposition of CLAUDETTE AMPARO, taken
by Defendant, pursuant to notice, at the Law
Offices of Wayne S. Kreger, 303 Fifth Avenue, New
York, NY 10016, before Allison Fowler, a
Shorthand Reporter and Notary Public of the State
of New York.

1

APPEARANCES:

LAW OFFICE OF JUSTIN A. ZELLER
    Attorneys for Plaintiff
    277 Broadway
    New York, New York 10007
BY:  BRANDON SHERR

LAW OFFICE OF WAYNE S. KREGER
    Attorneys for Defendants
    303 Fifth Avenue
    New York, New York 10016
BY:  WAYNE S. KREGER

[Page 2]

STIPULATIONS

        IT IS HEREBY STIPULATED AND AGREED,
by and between counsel for the respective parties
hereto, that all objections, except as to form,
are reserved to the time of trial.
        IT IS FURTHER STIPULATED AND AGREED
that the deposition may be signed and sworn to
before any officer authorized to administer an
oath.
        IT IS FURTHER STIPULATED AND AGREED
that the sealing and filing of the deposition be
waived.

[Page 3]

C L A U D E T T E   A M P A R O, the Witness
herein, having been first duly sworn by a Notary
Public in and of the State of New York, was
examined and testified as follows:
EXAMINATION BY
MR. KREGER:
    Q.  Would you please state your full name
for the record.
    A.  Claudette Amparo.
    Q.  What is your current address?
    A.  2501 Davidson Avenue, apartment 4A,
Bronx, New York 10468.
    Q.  Good morning, Ms. Amparo.  My name is
Wayne Kreger, and I represent Ink Point Tattoo
and Peter Santacruz in this litigation.  Have you
ever been deposed before?
    A.  No.
    Q.  This is the first time you've ever sat
for a deposition under oath?
    A.  Yes.
    Q.  I'm going to give you a couple of
admonitions that we talk about in the beginning
of depositions so that we're on the same page.
First thing is, you understand that you're under

[Page 4]

C. AMPARO

oath?
    A.  Yes.
    Q.  And you understand that the oath
carries a penalty of perjury if you don't tell
the truth?
    A.  Yes.
    Q.  And you understand that it's the same
oath that you would take if you were in a court
of law, like when you see on Law and Order and
shows like that when they're on the stand, the
oath you took here is the same oath you would
take in court, do you understand that?
    A.  Yes.
    Q.  Everything we say today that's on the
record is going to be taken down by the court
reporter, and when we're finished it's going to
be produced into book.  It reads kind of like a
play, where it will have my name and colon and
what I said and then your name and what you said.
So because of that, a couple things.  The first
is, it's important that you let me finish my
questions, even if you know what I'm going to
say, let me get the whole question out so it can
be taken down and then I'll extend you the same

[Page 5]

C. AMPARO

1
2  Q.  How did you meet Peter Santacruz?
3  A.  I met him at Andromeda.
4  Q.  How did you meet him there?
5  A.  He was a supplier.  A wholesaler.
6  Q.  So he wholesaled goods to --
7  A.  To tattoo shops.
8  Q.  And that's how you met him?
9  A.  Yes.
10  Q.  And then did you approach him or did he
11  approach you about working for him?
12  A.  He approached me.
13  Q.  And what did he say?
14  A.  That I could do better working for him.
15  Q.  And what did you say?
16  A.  I said yes.
17  Q.  And that was basically it?
18  A.  Yes.
19  Q.  And when did that conversation happen,
20  approximately?
21  A.  That happened in December.
22  Q.  December 2009?
23  A.  Yes.
24  Q.  So then you left Andromeda and you when
25  you said you supervised workers, what did you do

C. AMPARO

1  in the supervision of workers?
2
3  A.  He wanted me to stay in the store while
4  the workers was building the floor, the ceilings,
5  the walls, and he used to give me money to buy
6  lunch for them.
7  Q.  But you said "supervise."  I mean, you
8  didn't have any control or say in what the
9  workers were actually doing, right?
10  A.  No.
11  Q.  So you were basically just there at the
12  property?
13  A.  Yes.
14  Q.  Just watching the workers and buying
15  them lunch?
16  A.  Yes.
17  Q.  And anything else you did sort of on
18  Peter's behalf?
19  A.  No.
20  Q.  And when did you start doing that?
21  A.  February -- the end of February 2010.
22  Q.  Until the store opened?
23  A.  Yes.
24  Q.  What was your job title when you
25  started working there?

C. AMPARO

1
2  A.  I was a piercing -- piercing girl.
3  Q.  I'm sorry?
4  A.  Just did the piercing, and sales.
5  Q.  Anything else?
6  A.  Maintaining, cleaning the store.
7  Q.  Cleaning the store?
8  A.  Uh-huh, opening and closing, customer
9  service.
10  Q.  Anything else?
11  A.  That's it.
12  Q.  Did you have an actual job title?
13  A.  No.
14  Q.  Did you have a business card?
15  A.  No.
16  Q.  Okay.  And how much money did you make?
17  A.  Can you rephrase the question?
18  Q.  Which one?
19  A.  Business card.
20  Q.  You know, a business card --
21  A.  I know what a business card is, he just
22  -- he put my name in the flyer, not on the
23  business card.
24  Q.  So there was a flyer?
25  A.  There was a flyer, yes.  That's why I

C. AMPARO

1  told you to rephrase.
2
3  Q.  That's okay.  I'm glad you did.  So
4  there was a flyer that Peter Santacruz created?
5  A.  Yes.
6  Q.  And was that a flyer that he would
7  leave at other businesses to advertise?
8  A.  He would give flyers to people, and
9  when they called into the store, he said ask for
10  Claudia.
11  Q.  Okay.  And do you have any copies of
12  the flyer?
13  A.  No.
14  Q.  And you said your name was on it?
15  A.  Yes.
16  Q.  What did it say, just ask for Claudia?
17  A.  Ask for Claudia, yes.
18  Q.  That's the only time your name --
19  A.  -- was in anything.
20  Q.  Okay.  But there was no business card
21  in any business card holder or anything like
22  that?
23  A.  No.
24  Q.  Did you give me a complete list of all
25  your job responsibilities?  I'm going to read it

## C. AMPARO

1  back to you: Sales, piercing, cleaning the
2  store, opening and closing, customer service.
3  Anything else?
4       A.   No.
5       Q.   And were those all always your job
6  duties from April 23, 2010 to July 11, 2013?
7       A.   Yes.
8       Q.   And did any of those cease to be your
9  responsibilities?
10      A.   No.
11      Q.   And did anything ever get added to that
12  list?  Did you ever take on anything else besides
13  what you told me?
14      A.   He made me check Facebook every day,
15  answer to questions on Facebook.
16      Q.   Okay.  So?
17      A.   Posting pictures on Facebook.
18      Q.   Okay.  So call that social media?
19      A.   Yeah.
20      Q.   So the store had a Facebook page?
21      A.   Yes.
22      Q.   And you would put pictures of what,
23  like people's tattoos?
24      A.   Uh-huh, yes.

## C. AMPARO

1       Q.   And so you were in charge of updating
2  that?
3       A.   Yes.
4       Q.   And then if somebody messaged you on
5  Facebook, you would respond?
6       A.   Yes.
7       Q.   And anything else besides that?
8       A.   No.
9       Q.   So I know everything that you were
10  responsible for the whole time you were there?
11      A.   Yes.
12      Q.   What was the address of the business
13  that you worked at?
14      A.   373 Audubon Avenue.
15      Q.   Okay.  And do you know the ZIP?
16      A.   10034.
17      Q.   Okay.  So you said you did piercing;
18  was that something that you had to be licensed
19  for?
20      A.   Yes.
21      Q.   Where did you get licensed for it?
22      A.   New York.
23      Q.   No, I mean what institution, or do you
24  get it through the state?

## C. AMPARO

1       A.   Health Department.
2       Q.   Do you remember in the beginning I
3  asked you -- and maybe because it's the Health
4  Department, it wasn't exactly the right question,
5  but I wanted to know if you had any licenses or
6  certifications, and you told me about the
7  phlebotomy.
8       A.   Yeah.
9       Q.   So this is something besides that?
10      A.   Yes, you asked for classes, courses.
11      Q.   I agree, I didn't cover the state.
12          So let's cover the state now.  Do you
13  have any licenses or certifications from the
14  State of New York?
15      A.   Yes.
16      Q.   And what are those?
17      A.   Tattoo license.
18      Q.   How do you get a tattoo license from
19  the State of New York?
20      A.   You pay them $133, and you go and take
21  the test and they give it to you.
22      Q.   That's it?
23      A.   Yes.
24      Q.   What kind of test is it, a written

## C. AMPARO

1  test?
2       A.   A cleaning test.
3       Q.   What do you mean?
4       A.   They want to know if you know how to
5  clean, clean a table, clean your hands.
6       Q.   They don't actually watch you clean a
7  table or your hands?
8       A.   No.
9       Q.   They ask you questions about, like, do
10  you use soap and stuff like that?
11      A.   Yes.
12      Q.   That's it?
13      A.   That's it.
14      Q.   All you need to do is pay $133 and pass
15  the cleaning test?
16      A.   Yes.
17      Q.   And you can --
18      A.   Tattoo.
19      Q.   Tattoo and piercings?
20      A.   Yes.
21      Q.   So it's both in one?
22      A.   Yes.  There's no piercing license.
23      Q.   Pardon me?
24      A.   There's no license for piercing.

C. AMPARO

1  that's on 180th and Roosevelt.
2     Q.  Okay.
3     A.  He has Tattoo Alley, that's on 46-12
4  Greenpoint Avenue, Queens, New York.
5     Q.  Okay.
6     A.  He has Piercemania.
7     Q.  Piercemania?
8     A.  Yes.
9     Q.  Okay.
10    A.  Last address I know is 303 Fifth
11 Avenue.
12    Q.  303 Fifth Avenue?
13    A.  Yes.
14    Q.  Where we are right now?
15    A.  Yes.
16    Q.  Okay.
17    A.  I mean, that's where he met you.
18    Q.  Okay.  303 -- so you're saying
19 Piercemania was located in this building that
20 we're in?
21    A.  Yes.
22    Q.  Okay.  Go ahead.
23    A.  He has other two locations, I don't
24 know the address or the names.

C. AMPARO

1     Q.  So there's two other businesses --
2     A.  Yes.
3     Q.  -- whether it's piercing or tattoo, and
4  you don't know what they are or where they are?
5     A.  Yes, one is in Long Island, one is in
6  New Jersey, but I don't know the address or
7  exactly the name of the place.
8     Q.  How do you know that they exist?
9     A.  He used to always go there and call me
10 from there.
11    Q.  Did you ever work at any of these other
12 businesses?
13    A.  I trained at Studio 316.
14    Q.  What do you mean you trained?  You
15 trained someone else or you trained for you?
16    A.  For me, yes.
17    Q.  Okay.  When was that?
18    A.  That was February 2010.
19    Q.  Okay.  Was that before --
20    A.  -- we opened the business.
21    Q.  -- before the supervision of the
22 construction workers or at the same time?
23    A.  During.
24    Q.  Okay.  But you never worked there.  You

C. AMPARO

1  trained there, but you never worked there?
2     A.  Yes, trained there.
3     Q.  Is that right?
4     A.  Yes.
5     Q.  Did you work at any of the other
6  locations that you gave me?
7     A.  No.
8     Q.  Okay.  So I think, according to this
9  list, there are six other businesses, including
10 the two that you didn't know the names?
11    A.  Yes.
12    Q.  And you don't know of any others,
13 right?
14    A.  No.
15    Q.  Okay.  And you only trained at Studio
16 316?
17    A.  Yes.
18    Q.  And you never worked at any of them?
19    A.  No.
20    Q.  Have you ever been to any of the other
21 ones besides Studio 316?
22    Q.  And then how many employees worked at
23 the Ink Point location on Audubon when you were

C. AMPARO

1  there?
2     A.  Only me.
3     Q.  So you were the only employee?
4     A.  Yes.
5     Q.  Okay.  And do you know how many
6  employees worked at Studio 316?
7     A.  One.
8     Q.  Do you know the name?
9     A.  Patricia.
10    Q.  Patricia?
11    A.  Yes.
12    Q.  Do you know the last name?
13    A.  No.
14    Q.  And who about at Kudalin Studio?
15    A.  Charlie.
16    Q.  Was it only one employee?
17    A.  Yes.
18    Q.  Charlie?
19    A.  Yes.
20    Q.  And what about Tattoo Alley?
21    A.  Peter, he worked there.
22    Q.  The owner, Peter, not another Peter?
23    A.  No.
24    Q.  So there's no employees there that you

C. AMPARO

1  know of?
2
3      A.   The problem with tattoos is that I'm
4  telling you the names of the people that used to
5  be at the store and get paid hourly.
6      Q.   Right, that's what I asked.
7      A.   There's other people there, but they
8  are 50/50.
9      Q.   Right, they're independent contractors.
10     A.   Yeah.
11     Q.   I'm only asking about employees.
12     A.   Okay.
13     Q.   So Patricia is an employee?
14     A.   Yeah.
15     Q.   Charlie is an employee?
16     A.   And a tattoo artist.
17     Q.   Charlie is both, but he's an employee?
18     A.   Yes.
19     Q.   Tattoo Alley, were there any employees
20  that you know of?
21     A.   No, no.
22     Q.   Okay.  What about Piercemania?
23     A.   No.
24     Q.   No employees?
25     A.   No.

C. AMPARO

1  you've worked at the Audubon Avenue location of
2  Ink Point Tattoo?
3
4      A.   The neighbors.
5      Q.   Okay.  The neighbors of the business?
6      A.   Yes.
7      Q.   And do you know any of their names, the
8  actual people that worked at the businesses that
9  neighbored Ink Point?
10     A.   Yes.
11     Q.   What are they?
12     A.   His name is Miguel.
13     Q.   Miguel?
14     A.   Yes.
15     Q.   Do you know his last name?
16     A.   No.
17     Q.   And what's the name of the business
18  that Miguel is at?
19     A.   It's a barbershop next door.
20     Q.   Right next door?
21     A.   Yes.
22     Q.   And have you talked to Miguel about the
23  hours that you've worked?
24     A.   No.
25     Q.   And what is it that you think he can

C. AMPARO

1
2      Q.   And the Long Island one, do you know?
3      A.   Yes, there is, but I don't know the
4  name.
5      Q.   How many?
6      A.   There's one.
7      Q.   One employee.  And what about the one
8  in Jersey?
9      A.   There's only tattoo artists there.
10     Q.   So zero employees?
11     A.   Yes.
12     Q.   So as best you know, including
13  yourself, there were four employees at the seven
14  businesses, is that right?
15     A.   Yes.
16          MR. KREGER:  Let's take a break.
17          (A break was taken.)
18  EXAMINATION CONTINUED
19  BY MR. KREGER:
20          MR. KREGER:  Read back the last
21     question and answer, please.
22          (The requested portion of the record
23     was read by the court reporter.)
24     Q.   Is there anyone that can support the
25  testimony you've given about the hours that

C. AMPARO

1  say or that he knows about hours that you worked?
2
3      A.   He was there all the time too.
4      Q.   Okay.  So in other words, you think
5  that maybe he's seen you there at 10:30 or
6  thereabouts and then when you would close?
7      A.   Yes.
8      Q.   But he didn't close the barbershop at
9  1:00 a.m., did he?
10     A.   No, before me.
11     Q.   So he couldn't necessarily say when you
12  left or maybe that you were there when he left?
13     A.   Yes.
14     Q.   He is the owner of the barbershop or an
15  employee?
16     A.   No.
17     Q.   What does he do at the barbershop?
18     A.   He's a barber.
19     Q.   And you haven't talked to him since you
20  left Ink Point Tattoo?
21     A.   No.
22     Q.   Anybody else that can support what
23  you've said about the hours that you've worked?
24  What about the tattoo artists?
25     A.   Yes.

1
2
3      **Q.**   So if she contributed to the police
4  report and said that you stole from her shops,
5  she would be lying?
6      **A.**   Yes.
7      **Q.**   And were there any locations besides
8  those three?
9      **A.**   No.
10      MR. KREGER:  That's all I've got.
11  We're done.  Thank you.
12      MR. SHERR:  We demand the right to
13  review the transcript and changes and sign.
14
15          -o0o-
16
17      (Whereupon, the deposition of CLAUDETTE
18  AMPARO was concluded at 1:33 p.m.)
19
20
21          CLAUDETTE AMPARO
22
23  Subscribed and sworn to
   before me this      day
24      of          , 2014
25

**[Page 230]**

---

1
2          **C E R T I F I C A T E**
3      I, ALLISON FOWLER, a shorthand
4  reporter and Notary Public within and for
5  the State of New York, do hereby certify:
6      That the witness(es) whose
7  testimony is hereinbefore set forth was
8  duly sworn by me, and the foregoing
9  transcript is a true record of the
10  testimony given by such witness(es).
11      I further certify that I am not
12  related to any of the parties to this
13  action by blood or marriage, and that I am
14  in no way interested in the outcome of this
15  matter.
16
17
18          ALLISON FOWLER
19
20
21
22
23
24
25

**[Page 232]**

---

1
2          **I N D E X**
3
   WITNESS      EXAMINATION BY      PAGE
4
   C. Amparo      Mr. Kreger      4-230
5
6          **EXHIBITS**
7  DEFENDANT'S   DESCRIPTION      PAGE
8  Exhibit A    Complaint        128
9  Exhibit B    Photographs       133
10  Exhibit C    E-mails          177
11  Exhibit D    Complaint and Jury
             Demand          183
12
   Exhibit E    Answer          221
13
   (Exhibits retained by reporter.)
14
15      **REQUESTS FOR PRODUCTION**
16  DESCRIPTION             PAGE
17  Copy of Desk Appearance Ticket   122
18
       **INSERTS**
19
       (None)
20
21
22
23
24
25

**[Page 231]**

---

1          ERRATA SHEET
2  PAGE/LINE    CORRECTION
3  _____    _____
4  _____    _____
5  _____    _____
6  _____    _____
7  _____    _____
8  _____    _____
9  _____    _____
10  _____    _____
11  _____    _____
12  _____    _____
13  _____    _____
14  _____    _____
15  _____    _____
16  _____    _____
17  _____    _____
18  _____    _____
19  _____    _____
20  _____    _____
21  _____    _____
22  _____    _____
23  _____    _____
24  _____    _____
25  _____    _____

**[Page 233]**

**[59]  (Pages 230 to 233)**

# EXHIBIT

# "B"

UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------X

CLAUDETTE AMPARO,

                         PLAINTIFF,


    -against-                           13CV/232


INK POINT TATTOO AND BODY PIERCING INC.,

d/b/a INK POINT STUDIOS; and PETER SANTACRUZ;

JOINTLY AND SEVERALLY,

                         DEFENDANTS.

----------------------------------------------X



                    DATE:  May 6, 2014

                    TIME:  10:26 a.m.



          EXAMINATION BEFORE TRIAL of the

Defendant, PETER SANTACRUZ, taken by the

Plaintiff, pursuant to subpoena, held at the

offices of JUSTIN A. ZELLER, ESQ., 277 Broadway,

New York, New York, before Laura Liotine, a

Notary Public of the State of New York.

```
 1

 2    A P P E A R A N C E S:

 3

          LAW OFFICES OF JUSTIN A. ZELLER, P.C.

 4             Attorney for Plaintiff

               277 Broadway, Suite 408

 5             New York, NY  10007

               BY:  BRAD SHERR, ESQ.

 6

 7

 8        LAW OFFICES OF WAYNE KREGER

               Attorney for the Defendant

 9             303 Fifth Avenue, Suite 1201

               New York, NY  10016

10             BY:  WAYNE S. KREGER, ESQ.

11

12

13

14
                    *         *         *
15

16

17

18

19

20

21

22

23

24

25
```

1

2                    STIPULATIONS

3

4              IT IS HEREBY STIPULATED AND AGREED by

5    and between the attorneys for the respective

6    parties herein, that filing and sealing be and

7    the same are hereby waived.

8              IT IS FURTHER STIPULATED AND AGREED

9    that all objections, except as to the form of the

10   question, shall be reserved to the time of the

11   trial.

12             IT IS FURTHER STIPULATED AND AGREED

13   that the within deposition may be sworn to and

14   signed before any officer authorized to

15   administer an oath, with the same force and

16   effect as if signed and sworn to before the

17   Court.

18                    oOo

19

20

21

22

23

24

25

1                         P. Santacruz

2  P E T E R    S A N T A C R U Z, called as a

3                     witness, having been first duly sworn

4                     by a Notary Public of the State of

5                     New York, was examined and testified

6                     as follows:

7  EXAMINATION BY

8  MR. SHERR:

9        Q.      Please state your name for the

10  record.

11       A.      Peter Santacruz.

12       Q.      Where do you reside?

13       A.      150 East 85th Street, Apartment 7A,

14  New York, New York 11028.

15       Q.      Mr. Santacruz, my name is Brad Sherr.

16  I am the attorney representing Ms. Amparo, the

17  Plaintiff in this case, on her wage and hour rate

18  claims against Ink Point Tattoo and Body

19  Piercing, Inc, and you as Defendants.  Have you

20  ever been deposed before?

21       A.      No.

22       Q.      During a deposition I will ask you

23  questions and your obligation is to answer those

24  questions subject to any objections that your

25  attorney may raise to you.

1                    P. Santacruz

2        A.      It is a store.

3        Q.      Where is that located?

4        A.      It is in Queens.

5        Q.      Are you the owner of Tattoo Alley?

6        A.      Yes.

7        Q.      Is anyone else an owner of Tattoo

8   Alley?

9        A.      No.

10       Q.      Are there any other businesses you

11   own or operate?

12       A.      No.

13       Q.      Are there any other tattoo shops you

14   have any interest in?

15       A.      No.

16       Q.      Where do you spend your time during

17   the day?

18                    MR. KREGER:  Objection.

19       A.      I babysit my kids.

20       Q.      Are you involved in any other

21   business or job during the day?

22       A.      No.

23       Q.      Are you married?

24       A.      Yes.

25       Q.      What's your wife's name?

1                    P. Santacruz

2        A.      Loise Santacruz.

3        Q.      What does she do?  What is her job?

4        A.      She's an accountant.

5        Q.      What is her salary or wages on an

6   annual basis?

7        A.      I don't know exactly the figure.

8   Don't know the amount.

9        Q.      Could you provide a range or could

10  you approximate it?

11       A.      Maybe $90,000 to $100,000 a year.

12       Q.      Is Tattoo Alley profitable?

13       A.      No, not right now.  I just legally

14  went in business April, last month.

15       Q.      How many employees does Tattoo Alley

16  have?

17       A.      Nobody.  No employees.

18       Q.      Is Tattoo Alley still a going

19  concern?  Is it still operating?

20       A.      Yes.

21       Q.      Who runs it?

22       A.      I do.

23       Q.      Are you there during the week?

24       A.      Some days, yes.  When I can.

25       Q.      So is no one there when you're not

1                      P. Santacruz

2     opened like I said last month.

3          Q.     Does Tattoo Alley have bank accounts?

4          A.     Yes, I just opened it three or four

5     days ago.

6          Q.     Where are those bank accounts?

7          A.     It is the same bank.  TDI.

8          Q.     Do you have any other sources of

9     income besides Pierce Mania, Tattoo Alley and Ink

10    Point Studios?

11         A.     No.

12         Q.     Is the money you make from these

13    businesses and your wife's income enough to

14    support your family?

15                     MR. KREGER:  Objection to form.

16         A.     Not really.

17         Q.     How do you make ends meet?

18         A.     I am sorry.

19         Q.     How do you support your family?

20         A.     For the past few you know -- for a

21    few years my wife has been supporting.

22         Q.     Do you have personal bank accounts?

23         A.     Yes.

24         Q.     Where do you bank?

25         A.     Citibank.

```
 1                    A C K N O W L E D G M E N T

 2

 3       STATE OF NEW YORK)

 4                    ss:

 5       COUNTY OF NEW YORK)

 6

 7            I, PETER SANTACRUZ, hereby certify

 8       that I have read the transcript of my testimony

 9       taken under oath in my deposition of May 27,

10       2014; that the transcript is a true, complete and

11       correct record of what was asked, answered and

12       said during this deposition, and that the answers

13       on the record as given by me are true and

14       correct.

15

16

17            PETER SANTACRUZ

18

19       Signed and Subscribed to

20       before me this 1st day

21       of July            , 2014.

22

23

24

         Notary Public
25
```

STUART NAHAS
Notary Public, State of New York
No. 02NA5026737
Qualified in New York County
Commission Expires April 25, 19 2018

1                    C E R T I F I C A T E

2

3    STATE OF NEW YORK

4    COUNTY OF NEW YORK

5

6              I, LAURA LIOTINE, a Notary Public

7    within and for the State of New York, do hereby

8    certify:

9              That the witness whose examination is

10   hereinbefore set forth was duly sworn and that

11   such an examination is a true record of the

12   testimony given by such a witness.

13             I further certify that I am not

14   related to any of the parties to this action by

15   blood or marriage, and that I am not in any way

16   interested in the outcome of this matter.

17             IN WITNESS WHEREOF, I have hereunto

18   set my hand this 26th day of May, 2014.

19

20

21

22   _____

23             LAURA LIOTINE

24

25

# EXHIBIT

# "C"



# U.S. Corporation Income Tax Return

Form **1120**
Department of the Treasury
Internal Revenue Service (77)

For calendar year 2010 or tax year beginning 11/01 , 2010, ending 12/31 ,20 10
▶ See separate instructions.

OMB No. 1545-0123
**2010**

**A** Check if:
1a Consolidated return (attach Form 851) ☐
b Life/nonlife consolidated return ☐
2 Personal holding co. (attach Sch. PH) ☐
3 Personal service corp. (see instructions) ☐
4 Schedule M-3 attached ☐

Print or type

Name
INK POINT TATTOO AND BODY PIERCINGC

Number, street, and room or suite no. If a P.O. box, s   instructions.
303 FIFTH AVENUE SUITE 810

City or town, state, and ZIP code
NEW YORK, NY 10016

**B** Employer identification number
20-2050249

**C** Date incorporated
03/02/10

**D** Total assets (see instructions)
$

**E** Check if: **(1)** ☒ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change

| | | | | |
|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales 2158 **b** Less returns and allowances | c Bal ▶ | **1c** | 2158 |
| | 2 | Cost of goods sold (Schedule A, line 8) | **2** | 651 |
| | 3 | Gross profit. Subtract line 2 from line 1c | **3** | 1507 |
| | 4 | Dividends (Schedule C, line 19) | **4** | |
| | 5 | Interest | **5** | |
| | 6 | Gross rents | **6** | |
| | 7 | Gross royalties | **7** | |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | **8** | |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | **9** | |
| | 10 | Other income (see instructions-attach schedule) | **10** | |
| | 11 | **Total income.** Add lines 3 through 10 ▶ | **11** | 1507 |

| | | | |
|---|---|---|---|
| **Deductions** (See instructions for limitations on deductions.) | 12 | Compensation of officers (Schedule E, line 4) ▶ | **12** | |
| | 13 | Salaries and wages (less employment credits) | **13** | |
| | 14 | Repairs and maintenance | **14** | |
| | 15 | Bad debts | **15** | |
| | 16 | Rents | **16** | 1600 |
| | 17 | Taxes and licenses | **17** | |
| | 18 | Interest | **18** | |
| | 19 | Charitable contributions | **19** | |
| | 20 | Depreciation from Form 4562 not claimed on Schedule A and elsewhere on return (attach Form 4562) | **20** | |
| | 21 | Depletion | **21** | |
| | 22 | Advertising | **22** | |
| | 23 | Pension, profit-sharing, etc., plans | **23** | |
| | 24 | Employee benefit programs | **24** | |
| | 25 | Domestic production activities deduction (attach Form    03) | **25** | |
| | 26 | Other deductions (attach schedule) | **26** | 354 |
| | 27 | **Total deductions.** Add lines 12 through 26 ▶ | **27** | 1954 |
| | 28 | Taxable income before net operating loss deduction and  pecial deductions. Subtract line 27 from line 11. | **28** | −447 |
| | 29 | **Less: a** Net operating loss deduction (see instructions) **29a** | | |
| | | **b** Special deductions (Schedule C, line 20) **29b** | **29c** | |

| | | | |
|---|---|---|---|
| **Tax, Refundable Credits, and Payments** | 30 | **Taxable income.** Subtract line 29c from line 28 (see instructions) | **30** | −447 |
| | 31 | Total tax (Schedule J, line 10) | **31** | |
| | 32a | 2009 overpayment credited to 2010 **32a** | | |
| | b | 2010 estimated tax payments **32b** | | |
| | c | 2010 refund applied for on Form 4466 **32c** | d Bal ▶ **32d** | |
| | e | Tax deposited with Form 7004 **32e** | | |
| | f | Credits: (1) Form 2439 _____ (2) Form 4136 _____ **32f** | | |
| | g | Refundable credits from Form 3800, line 19c, and Form   27, line 8c **32g** | **32h** | |
| | 33 | Estimated tax penalty (see instructions). Check if Form  2220 is attached ▶ ☐ | **33** | |
| | 34 | **Amount owed.** If line 32h is smaller than the total of lines 31 and  3, enter amount owed | **34** | |
| | 35 | **Overpayment.** If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | **35** | |
| | 36 | Enter amount of line 35 you want: Credited to 2011 estimated tax ▶ _____ Refunded ▶ | **36** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other    axpayer) is based on all information of which preparer has any knowledge.

Signature of officer | Date | PRESIDENT
Title

May the IRS discuss this return with the preparer shown below (see instructions)? ☐ Yes ☒ No

**Paid Preparer's Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☒ if self-employed | PTIN |
|---|---|---|---|---|
| KAMRAN AKBAR | | 02/16/10 | | P01418551 |

Firm's name ▶
Firm's address ▶ 37 HOFFMAN STREET FRANKLIN SQUARE NY 11010

Firm's EIN ▶
Phone no. 646  648-3609

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.
QNA

Form **1120** (2010)

## Schedule A | Cost of Goods Sold (see instructions)

| | | | |
|---|---|---|---:|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | 651 |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | 651 |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 651 |

9a Check all methods used for valuing closing inventory:

    (i)  ☐ Cost

    (ii)  ☐ Lower of cost or market

    (iii)  ☐ Other (Specify method used and attach explanation.) ▶ --------------------------------

  b Check if there was a writedown of subnormal goods ▶ ☐

  c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ▶ ☐

  d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO | 9d |

  e If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? . . . ☐ Yes ☒ No

  f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation . . . ☐ Yes ☒ No

## Schedule C | Dividends and Special Deductions (see instructions)

| | | (a) Dividends received | (b) % | (c) Special deductions (a) x (b) |
|---|---|---:|---:|---|
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) | | 70 | |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) | | 80 | |
| 3 | Dividends on debt-financed stock of domestic and foreign corporations | | see instructions | |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities | | 42 | |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities | | 48 | |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs | | 70 | |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs | | 80 | |
| 8 | Dividends from wholly owned foreign subsidiaries | | 100 | |
| 9 | **Total.** Add lines 1 through 8. See instructions for limitation | | | |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 | | 100 | |
| 11 | Dividends from affiliated group members | | 100 | |
| 12 | Dividends from certain FSCs | | 100 | |
| 13 | Dividends from foreign corporations not included on lines 3, 6, 7, 8, 11, or 12 | | | |
| 14 | Income from controlled foreign corporations under subpart F (attach Form(s) 5471) | | | |
| 15 | Foreign dividend gross-up | | | |
| 16 | IC-DISC and former DISC dividends not included on lines 1, 2, or 3 | | | |
| 17 | Other dividends | | | |
| 18 | Deduction for dividends paid on certain preferred stock of public utilities | | | |
| 19 | **Total dividends.** Add lines 1 through 17. Enter here and on page 1, line 4 ▶ | | | |
| 20 | **Total special deductions.** Add lines 9, 10, 11, 12, and 18. Enter here and on page 1, line 29b . . . ▶ | | | |

## Schedule E | Compensation of Officers (see instructions for page 1, line 12)

**Note:** *Complete Schedule E only if total receipts (line 1a plus lines 4 through 10 on page 1) are $500,000 or more.*

| | (a) Name of officer | (b) Social security number | (c) Percent of time devoted to business | (d) Common | (e) Preferred | (f) Amount of compensation |
|---|---|---|---|---|---|---|
| 1 | | | % | % | % | |
| | | | % | % | % | |
| | | | % | % | % | |
| | | | % | % | % | |
| | | | % | % | % | |
| 2 | Total compensation of officers | | | | | |
| 3 | Compensation of officers claimed on Schedule A and elsewhere on return | | | | | |
| 4 | Subtract line 3 from line 2. Enter result here and on page 1, line 12 | | | | | |

*Percent of corporation stock owned* (header spans columns (d) Common and (e) Preferred)

| Schedule J | **Tax Computation** (see instructions) | | | |
|---|---|---|---|---|
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)) . . . . . . ▶ | | | |
| 2 | Income tax. Check if a qualified personal service corporation (see instructions) . . . . . . . . . . . ▶ | | **2** | |
| 3 | Alternative minimum tax (attach Form 4626) . . . . . . . . . . . . . . . . . . . . . . . . . . | | **3** | |
| 4 | Add lines 2 and 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **4** | |
| **5a** | Foreign tax credit (attach Form 1118) . . . . . . . . . . . . . . . . . . . | **5a** | | |
| **b** | Credit Form 8834, line 29 . . . . . . . . . . . . . . . . . . . . . . . | **5b** | | |
| **c** | General business credit.  (attach Form 3800) . . . . . . . . . . . . . . | **5c** | | |
| **d** | Credit for prior year minimum tax (attach Form 8827) . . . . . . . . . . | **5d** | | |
| **e** | Bond credits from Form 8912 . . . . . . . . . . . . . . . . . . . . . | **5e** | | |
| **6** | **Total credits.** Add lines 5a through 5e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **6** | |
| **7** | Subtract line 6 from line 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **7** | |
| **8** | Personal holding company tax (attach Schedule PH (Form 1120)) . . . . . . . . . . . . . . . . . . | | **8** | |
| **9** | Other taxes. Check if from: ☐ Form 4255  ☐ Form 8611  ☐ Form 8697<br>☐ Form 8866  ☐ Form 8902  ☐ Other (attach schedule) . . . . . | | **9** | |
| **10** | **Total tax.** Add lines 7 through 9. Enter here and on page 1, line 31 . . . . . . . . . . . . . . | | **10** | |

| Schedule K | **Other Information** (see instructions) | | Yes | No |
|---|---|---|---|---|
| 1 | Check accounting method:  **a** ☒ Cash  **b** ☐ Accrual  **c** ☐ Other (specify) ▶ _____ | | | |
| 2 | See the instructions and enter the: | | | |
| **a** | Business activity code no. ▶ 448310 | | | |
| **b** | Business activity ▶ JEWELRY STORES | | | |
| **c** | Product or service ▶ COSTUME JEWELRY | | | |
| 3 | Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? . . . . . . . . . . . . . . . . | | | X |
| | If "Yes," enter name and EIN of the parent corporation ▶ _____ | | | |
| 4 | At the end of the tax year: | | | |
| **a** | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part I of Schedule G (Form 1120) (attach Schedule G) . . . . . . . . . . | | | X |
| **b** | Did any individual or estate own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes", complete Part II of Schedule G (Form 1120) (attach Schedule G) . . . . | | | X |
| 5 | At the end of the tax year, did the corporation: | | | |
| **a** | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation not included on **Form 851**, Affiliations Schedule? For rules of constructive ownership, see instructions | | | X |
| | If "Yes," complete (i) through (iv). | | | |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iv) Country of Organization | (v) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**Schedule K**   *Continued*

| | | | | Yes | No |
|---|---|---|---|---|---|
| **b** Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv). | | | | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Country of Organization | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

|  | | Yes | No |
|---|---|---|---|
| **6** During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? (See sections 301 and 316.) . . . . . . . . . . . . . . | | | X |

If "Yes," file **Form 5452**, Corporate Report of Nondividend Distributions.

If this is a consolidated return, answer here for the parent corporation and on Form 851 for each subsidiary.

**7** At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of **(a)** the total voting power of all classes of the corporation's stock entitled to vote or **(b)** the total value of all classes of the corporation's stock? . . . . . . . . . .   **X**

For rules of attribution, see section 318. If "Yes," enter:

**(i)** Percentage owned ▶ - - - - - - - - - - - - - -   and **(ii)** Owner's country ▶ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(c)** The corporation may have to file **Form 5472**, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter the number of Forms 5472 attached ▶ - - - - - - - - - - - - - - - - - - - -

**8** Check this box if the corporation issued publicly offered debt instruments with original issue discount . . . . . . . . . . ▶ ☐

If checked, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments.

**9** Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**10** Enter the number of shareholders at the end of the tax year (if 100 or fewer) ▶ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**11** If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here . . . . . . . . ▶ ☐

If the corporation is filing a consolidated return, the statement required by Regulations section 1.1502-21(b)(3) must be attached or the election will not be valid.

**12** Enter the available NOL carryover from prior tax years (do not reduce it by any deduction on line 29a.) ▶ $ - - - - - - - - - - - - - - - - - -

**13** Are the corporation's total receipts (line 1a plus lines 4 through 10 on page 1) for the tax year **and** its total assets at the end of the tax year less than $250,000? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   X

If "Yes"? the corporation is not required to complete Schedules L, M-1, and M-2 on page 5. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during the tax year. ▶ $ - - - - - - - - - - - - - - - - - -

**14** Is the corporation required to file Schedule UTP (Form 1120), Uncertain Tax Position Statement (see instruction)? . . . . . . . . .   **X**

If "Yes," complete and attach Schedule UTP.

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| **Assets** | | **(a)** | **(b)** | **(c)** | **(d)** |
| 1 | Cash . . . . . . . . . . . . . | | | | |
| 2a | Trade notes and accounts receivable . . . . | | | | |
| b | Less allowance for bad debts . . . . . . . | ( | ) | ( | ) |
| 3 | Inventories . . . . . . . . . . . . . | | | | |
| 4 | U.S. government obligations . . . . . . . | | | | |
| 5 | Tax-exempt securities (see instructions) . . | | | | |
| 6 | Other current assets (attach schedule) . . . | | | | |
| 7 | Loans to shareholders . . . . . . . . . | | | | |
| 8 | Mortgage and real estate loans . . . . . . | | | | |
| 9 | Other investments (attach schedule) . . . | | | | |
| 10a | Buildings and other depreciable assets . . . | | | | |
| b | Less accumulated depreciation . . . . . . | ( | ) | ( | ) |
| 11a | Depletable assets . . . . . . . . . . | | | | |
| b | Less accumulated depletion . . . . . . . | ( | ) | ( | ) |
| 12 | Land (net of any amortization) . . . . . . . | | | | |
| 13a | Intangible assets (amortizable only) . . . . . | | | | |
| b | Less accumulated amortization . . . . . . | ( | ) | ( | ) |
| 14 | Other assets (attach schedule) . . . . . . | | | | |
| 15 | Total assets . . . . . . . . . . . | | | | |
| **Liabilities and Stockholders' Equity** | | | | | |
| 16 | Accounts payable . . . . . . . . . . . | | | | |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach schedule) . . | | | | |
| 19 | Loans from shareholders . . . . . . . . | | | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 | Other liabilities (attach schedule) . . . . . | | | | |
| 22 | Capital stock: **a** Preferred stock . . . . . | | | | |
| | **b** Common stock . . . . . | | | | |
| 23 | Additional paid-in capital . . . . . . . . | | | | |
| 24 | Retained earnings-Appropriated (attach schedule) | | | | |
| 25 | Retained earnings-Unappropriated . . . . | | | | |
| 26 | Adjustments to shareholders' equity (attach schedule) | | | | |
| 27 | Less cost of treasury stock . . . . . . . | | ( | ) | ( | ) |
| 28 | Total liabilities and shareholders' equity . . | | | | |

| Schedule M-1 | Reconciliation of Income (Loss) per Books With Income per Return |
|---|---|
| | **Note:** Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more - see instructions |

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books . . . . . . . | | 7 | Income recorded on books this year not | |
| 2 | Federal income tax per books . . . . . . | | | included on this return (itemize): | |
| 3 | Excess of capital losses over capital gains | | | Tax-exempt interest $ _____ | |
| 4 | Income subject to tax not recorded on books | | | _____ | |
| | this year (itemize): _____ | | | | |
| | | | 8 | Deductions on this return not charged | |
| | _____ | | | against book income this year (itemize): | |
| 5 | Expenses recorded on books this year not | | a | Depreciation . . . . $ _____ | |
| | deducted on this return (itemize): | | b | Charitable contributions $ _____ | |
| a | Depreciation . . . . . $ _____ | | | _____ | |
| b | Charitable contributions $ _____ | | | | |
| c | Travel and entertainment $ _____ | | 9 | Add lines 7 and 8 . . . . . . . . . | |
| | _____ | | 10 | Income (page 1, line 28)-line 6 less line 9 | |
| 6 | Add lines 1 through 5 . . . . . . . . . | | | | |

| Schedule M-2 | Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L) |
|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year . . . . . . . | | 5 | Distributions: **a** Cash . . . . . . . . . | |
| 2 | Net income (loss) per books . . . . . . . | | | **b** Stock . . . . . . . . . | |
| 3 | Other increases (itemize): _____ | | | **c** Property . . . . . . . . | |
| | _____ | | 6 | Other decreases (itemize): _____ | |
| | | | 7 | Add lines 5 and 6 . . . . . . . . . | |
| 4 | Add lines 1, 2, and 3 . . . . . . . . . | | 8 | Balance at end of year (line 4 less line 7) | |

SUPPORTING STATEMENTS FOR CORPORATION
INK POINT TATTOO AND BODY PIERCINGC
20-2050249
303 FIFTH AVENUE SUITE 810
NEW YORK, NY 10016

----------------------------------------
**** SCHEDULE of Other Deductions:

| Description | Amount |
|-------------|--------|
| OFFICE TELEPHONE | 63 |
| ELECTRICITY | 148 |
| CELLULAR PHONE | 28 |
| BANK CHARGES | 15 |
| ACCOUNTANT'S FEE | 100 |
| Total Other Deductions | 354 |

# EXHIBIT

# "D"

# U.S. Corporation Income Tax Return

For calendar year 2011 or tax year beginning ____ / ____ , 2011, ending ____ / ____ ,20 ___

▶ **See separate instructions.**

OMB No. 1545-0123

**2011**

**A** Check if:
1a Consolidated return (attach Form 851) ☐
b Life/nonlife consolidated return ☐
2 Personal holding co. (attach Sch. PH) ☐
3 Personal service corp. (see instructions) ☐
4 Schedule M-3 attached ☐

TYPE OR PRINT

Name
INK POINT TATTOO AND BODY PIER INC

Number, street, and room or suite no. If a P.O. box, see instructions.
303 5TH AVENUE SUITE 810

City or town, state, and ZIP code
NEW YORK, NY 10016

**B** Employer identification number
27-2050249

**C** Date incorporated
11/15/2010

**D** Total assets (see instructions)
$

**E** Check if: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change

| | | | |
|---|---|---|---|
| **Income** | 1a | Merchant card and third-party payments (see instructions) . . . . . . . . | 1a | |
| | b | Gross receipts or sales not reported on line 1a (see instructions) . . . . . | 1b | 19851 |
| | c | Total. Add lines 1a and 1b . . . . . . . . . . . . . . . . . . . . | 1c | 19851 |
| | d | Returns and allowances plus any other adjustments (see instructions) . . . | 1d | |
| | e | Subtract line 1d from line 1c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1e | 19851 |
| | 2 | Cost of goods sold from Form 1125-A, line 8 (attach Form 1125-A) . . . . . . . . . . . . . | 2 | 4630 |
| | 3 | Gross profit. Subtract line 2 from line 1e. . . . . . . . . . . . . . . . . . . . . . . . | 3 | 15221 |
| | 4 | Dividends (Schedule C, line 19) . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | |
| | 5 | Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | |
| | 6 | Gross rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | |
| | 7 | Gross royalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 | |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) . . . . . . . . . . . . | 8 | |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . . | 9 | |
| | 10 | Other income (see instructions-attach schedule) . . . . . . . . . . . . . . . . . . . | 10 | |
| | 11 | **Total income. Add lines 3 through 10** . . . . . . . . . . . . . . . . . . . . ▶ | 11 | 15221 |

(COPY)

| | | | |
|---|---|---|---|
| **Deductions** (See instructions for limitations on deductions.) | 12 | Compensation of officers from Form 1125-E, line 4 (attach Form 1125-E) . . . . . . . . ▶ | 12 | 7800 |
| | 13 | Salaries and wages (less employment credits) . . . . . . . . . . . . . . . . . . . . | 13 | |
| | 14 | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 | |
| | 15 | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 | |
| | 16 | Rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 | 7200 |
| | 17 | Taxes and licenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 | 939 |
| | 18 | Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 | |
| | 19 | Charitable contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 | |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) . | 20 | |
| | 21 | Depletion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 | |
| | 22 | Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 | 600 |
| | 23 | Pension, profit-sharing, etc., plans . . . . . . . . . . . . . . . . . . . . . . . | 23 | |
| | 24 | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 | |
| | 25 | Domestic production activities deduction (attach Form 8903) . . . . . . . . . . . . . | 25 | |
| | 26 | Other deductions (attach schedule) . . . . . . . . . . . . . . . . . . . . . . . | 26 | 539 |
| | 27 | **Total deductions. Add lines 12 through 26** . . . . . . . . . . . . . . . . . . . . ▶ | 27 | 17078 |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11. | 28 | -1857 |
| | 29a | Net operating loss deduction (see instructions) . . . . . . . . . . . . . . | 29a | |
| | b | Special deductions (Schedule C, line 20) . . . . . . . . . . . . . . . | 29b | |
| | c | Add lines 29a and 29b . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29c | |

| | | | |
|---|---|---|---|
| **Tax, Refundable Credits, and Payments** | 30 | Taxable income. Subtract line 29c from line 28 (see instructions) . . . . . . . . . . . . . . . | 30 | -1857 |
| | 31 | Total tax (Schedule J, Part I, line 21) . . . . . . . . . . . . . . . . . . . . | 31 | |
| | 32 | Total payments and refundable credits (Schedule J, Part II, line 21) . . . . . . . . . . . . | 32 | |
| | 33 | Estimated tax penalty (see instructions). Check if Form 2220 is attached . . . . . . . . . . ▶ ☐ | 33 | |
| | 34 | Amount owed. If line 32 is smaller than the total of lines 31 and 33, enter amount owed . . . . . . . . | 34 | |
| | 35 | Overpayment. If line 32 is larger than the total of lines 31 and 33, enter amount overpaid . . . . . . . | 35 | |
| | 36 | Enter amount of line 35 you want: Credited to 2012 estimated tax ▶ ____ Refunded ▶ | 36 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer ____ Date ____ Title PRESIDENT

May the IRS discuss this return with the preparer shown below (see instructions)? Yes ☐ No ☒

**Paid Preparer's Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☒ if self-employed | PTIN |
|---|---|---|---|---|
| KAMRAN AKBAR | | 03/13/12 | | P01418551 |

Firm's name ▶ KAMRAN AKBAR
Firm's address ▶ 37 HOFFMAN STREET FRANKLIN SQUARE NY 11010

Firm's EIN ▶
Phone no. 646 648-3609

For Paperwork Reduction Act Notice, see separate instructions.
QNA

Form **1120** (2011)

| Schedule C | Dividends and Special Deductions (see instructions) | (a) Dividends received | (b) % | (c) Special deductions (a) x (b) |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) . . . . . . . . . . . . . . . . . . . . . . . | | 70 | |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) . . . . . . . . . . . . . . . . . . . . . . . | | 80 | |
| 3 | Dividends on debt-financed stock of domestic and foreign corporations . . . . | | see instructions | |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities . . | | 42 | |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities . . . | | 48 | |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs . . | | 70 | |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs . . . | | 80 | |
| 8 | Dividends from wholly owned foreign subsidiaries . . . . . . . . . . . . . . | | 100 | |
| 9 | **Total.** Add lines 1 through 8. See instructions for limitation . . . . . . . . . . | | | |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 . . . . . | | 100 | |
| 11 | Dividends from affiliated group members . . . . . . . . . . . . . . . . . | | 100 | |
| 12 | Dividends from certain FSCs . . . . . . . . . . . . . . . . . . . . . . | | 100 | |
| 13 | Dividends from foreign corporations not included on lines 3, 6, 7, 8, 11, or 12 . . | | | |
| 14 | Income from controlled foreign corporations under subpart F (attach Form(s) 5471) . . | | | |
| 15 | Foreign dividend gross-up . . . . . . . . . . . . . . . . . . . . . . . | | | |
| 16 | IC-DISC and former DISC dividends not included on lines 1, 2, or 3 . . . . . . | | | |
| 17 | Other dividends . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| 18 | Deduction for dividends paid on certain preferred stock of public utilities . . . . | | | |
| 19 | **Total dividends.** Add lines 1 through 17. Enter here and on page 1, line 4 . ▶ | | | |
| 20 | **Total special deductions.** Add lines 9, 10, 11, 12, and 18. Enter here and on page 1, line 29b . . . . . . . . . ▶ | | | |

| **Schedule J** | **Tax Computation and Payment**  (see instructions) | | |
|---|---|---|---|

**Part I - Tax Computation**

| | | | |
|---|---|---|---|
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)) . . . . . . ▶ | | |
| 2 | Income tax. Check if a qualified personal service corporation (see instructions) . . . . . . . . . . . ▶ | **2** | |
| 3 | Alternative minimum tax (attach Form 4626) . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | |
| 4 | Add lines 2 and 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** | |
| 5a | Foreign tax credit (attach Form 1118) . . . . . . . . . . . | **5a** | |
| b | Credit Form 8834, line 30 (attach Form 8834) . . . . . . . . | **5b** | |
| c | General business credit.  (attach Form 3800) . . . . . . . . | **5c** | |
| d | Credit for prior year minimum tax (attach Form 8827) . . . . . | **5d** | |
| e | Bond credits from Form 8912 . . . . . . . . . . . . . . . | **5e** | |
| 6 | **Total credits.** Add lines 5a through 5e . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | |
| 7 | Subtract line 6 from line 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7** | |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) . . . . . . . . . . . . . . . . . . | **8** | |
| 9a | Recapture of investment credit (attach Form 4255) . . . . . . | **9a** | |
| b | Recapture of low-income housing credit (attach Form 8611) . . . . . . . . . | **9b** | |
| c | Interest due under the look-back method—completed long-term contracts (attach Form 8697) . . . . . . . . . . . . . . . . . . . . . . | **9c** | |
| d | Interest due under the look-back method—income forecast method (attach Form 8866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **9d** | |
| e | Alternative tax on qualifying shipping activities (attach Form 8902) . . . . . . . | **9e** | |
| f | Other (see instructions—attach schedule) . . . . . . . . . . | **9f** | |
| 10 | **Total.** Add lines 9a through 9f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **10** | |
| 11 | **Total tax.** Add lines 7,8, and 10. Enter here and on page 1, line 31 . . . . . . . . . . . . . . | **11** | |

**Part II - Payments and Refundable Credits**

| | | | |
|---|---|---|---|
| 12 | 2010 overpayment credited to 2011 . . . . . . . . . . . . . . . . . . . . . . . | **12** | |
| 13 | 2011 estimated tax payments . . . . . . . . . . . . . . . . . . . . . . . . . . | **13** | |
| 14 | 2011 refund applied for on Form 4466 . . . . . . . . . . . . . . . . . . . . . . | **14** | ( ) |
| 15 | Combine lines 12, 13, and 14 . . . . . . . . . . . . . . . . . . . . . . . . . . | **15** | |
| 16 | Tax deposited with Form 7004 . . . . . . . . . . . . . . . . . . . . . . . . . . | **16** | |
| 17 | Withholding (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . | **17** | |
| 18 | **Total payments.** Add lines 15, 16 and 17 . . . . . . . . . . . . . . . . . . . . | **18** | |
| 19 | Refundable credits from: | | |
| a | Form 2439 . . . . . . . . . . . . . . . . . . . . . . . | **19a** | |
| b | Form 4136 . . . . . . . . . . . . . . . . . . . . . . . | **19b** | |
| c | Form 3800, line 17c and Form 8827, line 8c . . . . . . . . . | **19c** | |
| d | Other (attach schedule—see instructions) . . . . . . . . . . | **19d** | |
| 20 | **Total credits.** Add lines 19a through 19d . . . . . . . . . . . . . . . . . . . . | **20** | |
| 21 | **Total payments and credits.** Add lines 18 and 20. Enter here and on page 1, line 32 . . . | **21** | |

| **Schedule K** | **Other Information**  (see instructions) | | | **Yes** | **No** |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | Check accounting method:  **a** ☒ Cash  **b** ☐ Accrual  **c** ☐ Other (specify) ▶ | | | | |
| 2 | See the instructions and enter the: | | | | |
| a | Business activity code no. ▶ 812990 | | | | |
| b | Business activity ▶ ALL OTHER PERSONAL S | | | | |
| c | Product or service ▶ PIERCING AND TATTOOS | | | | |
| 3 | Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? . . . . . . . . . . . . . . . . . . . | | | | X |
| | If "Yes," enter name and EIN of the parent corporation ▶ | | | | |
| 4 | At the end of the tax year: | | | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part I of Schedule G (Form 1120) (attach Schedule G) . . . . . . . . . . | | | | X |
| b | Did any individual or estate own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part II of Schedule G (Form 1120) (attach Schedule G) . . . | | | | X |

**Schedule K**   **Other Information**   *continued*  (see instructions)

| | Yes | No |
|---|---|---|

**5** At the end of the tax year, did the corporation:

**a** Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation not included on **Form 851**, Affiliations Schedule? For rules of constructive ownership, see instructions.    **No: X**

If "Yes," complete (i) through (iv) on page 4.

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Organization | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**b** Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions.

If "Yes," complete (i) through (iv).    **No: X**

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Country of Organization | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**6** During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? (See sections 301 and 316.) . . . . . . . . . . . . . .   **No: X**

If "Yes," file **Form 5452**, Corporate Report of Nondividend Distributions.

If this is a consolidated return, answer here for the parent corporation and on Form 851 for each subsidiary.

**7** At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of **(a)** the total voting power of all classes of the corporation's stock entitled to vote or **(b)** the total value of all classes of the corporation's stock? . . . . . . . . . .   **No: X**

For rules of attribution, see section 318. If "Yes," enter:

**(i)** Percentage owned ▶ _____ and **(ii)** Owner's country ▶ _____

**(c)** The corporation may have to file **Form 5472**, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter the number of Forms 5472 attached ▶ _____

**8** Check this box if the corporation issued publicly offered debt instruments with original issue discount . . . . . . . . . . ▶ ☐

If checked, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments.

**9** Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ _____

**10** Enter the number of shareholders at the end of the tax year (if 100 or fewer) ▶ _____

**11** If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here . . . . . . . . ▶ ☒

If the corporation is filing a consolidated return, the statement required by Regulations section 1.1502-21(b)(3) must be attached or the election will not be valid.

**12** Enter the available NOL carryover from prior tax years (do not reduce it by any deduction on line 29a.) ▶ $ _____

**13** Are the corporation's total receipts (line 1c plus lines 4 through 10 on page 1) for the tax year **and** its total assets at the end of the tax year less than $250,000? . . . . . . . . . .   **Yes: X**

If "Yes"? the corporation is not required to complete Schedules L, M-1, and M-2 on page 5. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during the tax year. ▶ $ _____

**14** Is the corporation required to file Schedule UTP (Form 1120), Uncertain Tax Position Statement (see instruction)? . . . . . . . .   **No: X**

If "Yes," complete and attach Schedule UTP.

**15** Did the corporation make any payments in 2011 that would require it to file Form(s) 1099 (see instructions)? . . . . . . . . .   **No: X**

**b** If "Yes," did the corporation or will the corporation file all required Form(s) 1099? . . . . . . . . .

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | **Assets** | **(a)** | **(b)** | **(c)** | **(d)** |
| 1 | Cash . . . . . . . . . . . . . | | | | |
| 2a | Trade notes and accounts receivable . . . | | | | |
| b | Less allowance for bad debts . . . . . . | ( ) | | ( ) | |
| 3 | Inventories . . . . . . . . . . . | | | | |
| 4 | U.S. government obligations . . . . . . . | | | | |
| 5 | Tax-exempt securities (see instructions) . . | | | | |
| 6 | Other current assets (attach schedule) . . . | | | | |
| 7 | Loans to shareholders . . . . . . . . | | | | |
| 8 | Mortgage and real estate loans . . . . . | | | | |
| 9 | Other investments (attach schedule) . . . | | | | |
| 10a | Buildings and other depreciable assets . . . | | | | |
| b | Less accumulated depreciation . . . . . . | ( ) | | ( ) | |
| 11a | Depletable assets . . . . . . . . . | | | | |
| b | Less accumulated depletion . . . . . . | ( ) | | ( ) | |
| 12 | Land (net of any amortization) . . . . . . | | | | |
| 13a | Intangible assets (amortizable only) . . . . | | | | |
| b | Less accumulated amortization . . . . . | ( ) | | ( ) | |
| 14 | Other assets (attach schedule) . . . . . . | | | | |
| 15 | Total assets . . . . . . . . . . . | | | | |
| | **Liabilities and Stockholders' Equity** | | | | |
| 16 | Accounts payable . . . . . . . . . . | | | | |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach schedule) . . | | | | |
| 19 | Loans from shareholders . . . . . . . . | | | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 | Other liabilities (attach schedule) . . . . . | | | | |
| 22 | Capital stock: **a** Preferred stock . . . . . | | | | |
| | **b** Common stock . . . . . | | | | |
| 23 | Additional paid-in capital . . . . . . . . | | | | |
| 24 | Retained earnings-Appropriated (attach schedule) | | | | |
| 25 | Retained earnings-Unappropriated . . . . | | | | |
| 26 | Adjustments to shareholders' equity (attach schedule) | | | | |
| 27 | Less cost of treasury stock . . . . . . . | | ( ) | | ( ) |
| 28 | Total liabilities and shareholders' equity . . | | | | |

| Schedule M-1 | Reconciliation of Income (Loss) per Books With Income per Return |
|---|---|

**Note:** Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more - see instructions

| | | | | |
|---|---|---|---|---|
| 1 | Net income (loss) per books . . . . . . . | | 7 Income recorded on books this year not | |
| 2 | Federal income tax per books . . . . . . | | included on this return (itemize): | |
| 3 | Excess of capital losses over capital gains | | Tax-exempt interest $ _____ | |
| 4 | Income subject to tax not recorded on books | | _____ | |
| | this year (itemize): _____ | | | |
| | _____ | | 8 Deductions on this return not charged | |
| 5 | Expenses recorded on books this year not | | against book income this year (itemize): | |
| | deducted on this return (itemize): | | a Depreciation . . . . . $ _____ | |
| a | Depreciation . . . . . $ _____ | | b Charitable contributions $ _____ | |
| b | Charitable contributions $ _____ | | _____ | |
| c | Travel and entertainment $ _____ | | 9 Add lines 7 and 8 . . . . . . . . . . | |
| | _____ | | 10 Income (page 1, line 28)-line 6 less line 9 | |
| 6 | Add lines 1 through 5 . . . . . . . . | | | |

| Schedule M-2 | Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L) |
|---|---|

| | | | | |
|---|---|---|---|---|
| 1 | Balance at beginning of year . . . . . . | | 5 Distributions: **a** Cash . . . . . . . . | |
| 2 | Net income (loss) per books . . . . . . . | | **b** Stock . . . . . . . . . | |
| 3 | Other increases (itemize): _____ | | **c** Property . . . . . . . | |
| | _____ | | 6 Other decreases (itemize): _____ | |
| | _____ | | 7 Add lines 5 and 6 . . . . . . . . . . | |
| 4 | Add lines 1, 2, and 3 . . . . . . . . . | | 8 Balance at end of year (line 4 less line 7) | |

SUPPORTING STATEMENTS FOR CORPORATION
INK POINT TATTOO AND BODY PIER INC
27-2050249
303 5TH AVENUE SUITE 810
NEW YORK, NY 10016

----------------------------------------
**** SCHEDULE of Other Deductions:

| Description | Amount |
|---|---|
| BANK CHARGES | 63 |
| UTILITIES | 276 |
| ACCOUNTANT FEES | 200 |
| Total Other Deductions | 539 |

Form **1125-A**

(December 2011)

Department of the Treasury
Internal Revenue Service

# Cost of Goods Sold

▶ **Attach to Form 1120, 1120-C, 1120-F, 1120-S, 1065, and 1065-B.**

OMB No. 1545-XXXX

| Name | Employer identification number |
|---|---|
| INK POINT TATTOO AND BODY PIER INC | 27-2050249 |

| | | | |
|---|---|---:|---|
| **1** | Inventory at beginning of year . . . . . . . . . . . . . . . . | **1** | |
| **2** | Purchases . . . . . . . . . . . . . . . . . . . . . | **2** | |
| **3** | Cost of labor . . . . . . . . . . . . . . . . . . . | **3** | |
| **4** | Additional section 263A costs (attach schedule) . . . . . . . . . | **4** | |
| **5** | Other costs (attach schedule) . . . . . . . . . . . . . . | **5** | 4630 00 |
| **6** | **Total.** Add lines 1 through 5 . . . . . . . . . . . . . . . | **6** | 4630 00 |
| **7** | Inventory at end of year . . . . . . . . . . . . . . . . | **7** | |
| **8** | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return (see instructions) . . . . . . . . | **8** | 4630 00 |

**9a** Check all methods used for valuing closing inventory:

   *(i)* ☐ Cost

   *(ii)* ☐ Lower of cost or market

   *(iii)* ☐ Other (Specify method used and attach explanation.) ▶ _____

  **b** Check if there was a writedown of subnormal goods . . . . . . . . . . . . . . . ▶ ☐

  **c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) . . . . . . . ▶ ☐

  **d** If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO . . . . . . . . . . . . . . . . . . . . . . **9d** | 00

  **e** If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? . . . ☐ Yes ☒ No

  **f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No

**For Paperwork Reduction Act Notice, see separate instructions.**

QNA

Form **1125-A** (12-2011)

----------------------------------------

**** SCHEDULE of Schedule A - Other Costs:

| Description | Amount |
|---|---|
| PIERCING JEWELRY | 3,859 |
| CELLULAR PHONE | 560 |
| FREIGHT IN | 211 |
| Total Schedule A - Other Costs | 4,630 |