UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CLAUDETTE AMPARO,                                           :
                                    Plaintiff,              :
                                                            :   13 Civ. 07232 (LGS)
              -against-                                     :
                                                            :   OPINION AND ORDER
INK POINT TATTOO AND BODY PIERCING,                         :
INC, et al.,                                                :
                                    Defendants.             :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/15/15

LORNA G. SCHOFIELD, District Judge:

Plaintiff Claudette Amparo brings claims against Defendants Ink Point Tattoo and Body Piercing, Inc., d/b/a Ink Point Studios ("Ink Point") and Peter Santacruz, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and New York law. The parties cross-move for summary judgment on Plaintiff's claims. For the reasons that follow, Defendants' motion is granted, and Plaintiff's motion is denied.

I.      FACTS

From April 23, 2010, to July 11, 2013, Plaintiff was employed by Defendants at Ink Point, a tattoo parlor in Manhattan. Plaintiff's job responsibilities included piercing, sales, maintaining and cleaning the store, opening and closing, customer service and management of social media. The parties dispute Plaintiff's income while at Ink Point. At her deposition, Plaintiff testified that she earned $8 per hour and was paid for a forty-hour workweek. In contrast, Defendant Santacruz testified at his deposition that Plaintiff was paid $552 per week, and that the amount was recorded in a notebook on a weekly basis. Plaintiff was paid in cash.

Ink Point did not maintain time cards or a system for tracking the hours Plaintiff worked, and the parties also dispute that number. Plaintiff testified at her deposition that her weekly hours ranged from 70 to 84, and that she worked seven days a week, from approximately 10:30 a.m. to between 1:00 and 3:00 a.m. Santacruz, on the other hand, testified that Plaintiff worked from

noon to 9:00 p.m. five days a week.

At her deposition, Plaintiff testified that Santacruz owned a total of six tattoo studios in addition to Ink Point, of which she was able to name four: Piercemania, Studio 316, Kundalink Ink and Tattoo Alley. She was unable to identify the remaining two tattoo studios. Plaintiff visited only one of the other tattoo studios. Defendants have adduced evidence disputing that Santacruz owned any of the tattoo studios identified by Plaintiff, other than Piercemania and Tattoo Alley, which was opened after Plaintiff's employment with Ink Point ceased. That evidence includes a printout from the New York Department of State website listing Alma Chispe as the Chief Executive Office and Principal Executive Officer of Studio 316, and a letter from an individual by the name of Karoline Alburquerque stating that Ms. Alburquerque is the owner and sole proprietor of Kundalin Ink LLC.

Ink Point earned revenue from tattoo artists who worked as independent contractors, with each tattoo artist paying a certain share of the revenue they earned at the tattoo studio. Ink Point's tax returns, which were signed by Santacruz and prepared by an accountant, show that in 2010, Ink Point had gross earnings of $2,158.00; in 2011, it had gross earnings of $19,851.00; in 2012, it had gross earnings of $19,710.00 and in 2013, it had gross earnings of $18,892.00. Santacruz testified that Plaintiff's wages were not reported on the tax returns. Piercemania's tax returns reflect that its gross earnings in 2010 amounted to $53,270; in 2011, its gross earnings were $33,750; in 2012, its gross earnings were $34,980; and in 2013, its gross earnings were $57,630.

## II.     STANDARD

Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact. *See Celotex*, 477 U.S. at 322. In satisfying this burden, the non-moving party cannot rely merely on allegations or denials of the factual assertions of the moving party. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 324. Moreover, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). The non-moving party must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. *See Celotex*, 477 U.S. at 324. Furthermore, to demonstrate a genuine dispute as to the material facts, the non-moving party must come forward with sufficient evidence to permit a reasonable jury to return a verdict in its favor. *See Anderson*, 477 U.S. at 248.

### III.   DISCUSSION

#### A.   FLSA

FLSA protects "the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). It requires that employers pay a minimum wage, as well as overtime compensation to employees who work more than forty hours per week

if an employee either "is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." *Id.* §§ 206(a), 207(a)(1); *see also Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96-97 (2d Cir. 2009).

Plaintiff asserts that FLSA is applicable to her case only under the second prong, known as "enterprise coverage." A business qualifies as an "enterprise" under FLSA where it "has employees engaged in commerce or in the production of goods for commerce, or . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done [that] is not less than $500,000." 29 U.S.C. § 203(s)(1)(A); *see also Alladin v. Paramount Management, LLC*, No. 12 Civ. 4309, 2013 WL 4526002, at *5 (S.D.N.Y. Aug. 27, 2013).

Defendants are not covered by FLSA because they do not have annual gross sales or business of $500,000 or more. The tax returns presented by Defendants show that, for the years 2010 through 2013, Ink Point's gross earnings never exceeded approximately $20,000 for any given year. Even if Ink Point's gross earnings for those years were aggregated with those of Piercemania – which indisputably was not Plaintiff's employer – annual gross earnings never exceeded approximately $76,000 in any given year, still far below the monetary threshold imposed by FLSA. Therefore, there is no material issue of fact regarding FLSA's inapplicability to this action. *Accord Yang Li v. Ya Yi Cheng*, No. 10 Civ. 4664, 2012 WL 1004854, at *4 (E.D.N.Y. Jan. 6, 2012) (granting summary judgment to defendants where there was "no evidence that defendant . . . had gross revenues in excess of $500,000"), *report and recommendation adopted*, No. 10 Civ. 4664, 2012 WL 1004852 (E.D.N.Y. Mar. 23, 2012); *Xelo v. Mavros,* No. 03 Civ. 3665, 2005 WL 2385724, at *4 (E.D.N.Y. Sept. 28, 2005) (granting

summary judgment where "defendants have met their burden of demonstrating that there is no question of material fact with regard to [whether the defendants'] annual income" was under $500,000).

In contending otherwise, Plaintiff lodges three arguments, none of which are persuasive. First, Plaintiff, citing out-of-Circuit authority, disputes the admissibility of the tax returns showing Defendants' gross income. Courts in this Circuit, however, routinely rely on tax returns in determining FLSA's applicability at the summary judgment stage. *E.g.*, *Yang Li*, 2012 WL 1004854, at *5 (relying on, *inter alia*, the defendants' tax returns in assessing whether defendants met monetary threshold for enterprise coverage under FLSA); *Saleem v. Corporate Transp. Group, Ltd.*, No. 12 Civ. 8450, 2014 WL 4626075, at *12 (S.D.N.Y. Sept. 16, 2014) (relying on the plaintiff's tax returns in assessing whether the plaintiff was an "employee" for purposes of FLSA).

Second, Plaintiff also appears to challenge the accuracy of Defendants' tax returns, alleging that Defendants failed to report income earned by the independent contractors working as tattoo artists at Ink Point. Plaintiff cites no authority for the proposition that Defendants were required to report income earned by independent contractors, nor does Plaintiff present evidence in support of this assertion. Plaintiff's own speculation is insufficient to create an issue of material fact, particularly where the tax returns at issue were signed, and included the name and contact information for the accountant who prepared them. *Cf. Monterossa v. Martinez Rest. Corp.,* No. 11 Civ. 3689, 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012) (declining to rely on defendant's tax returns where, *inter alia*, "the submitted returns [were] unsigned and unaccompanied by a statement or affidavit of the tax preparer.").

Third, Plaintiff maintains that Santacruz owned six businesses in addition to Ink Point,

implicitly suggesting that the revenue of these other businesses must be aggregated to determine whether FLSA's monetary threshold is met.  Again, however, Plaintiff provides no evidence for this contention beyond her own speculation; moreover, she was unable to name two of the businesses at her deposition.  Defendant Santacruz concedes that he owns Piercemania, and that he opened a third business, Tattoo Alley, in April 2014, after Plaintiff ceased to be employed by Ink Point.  He has submitted evidence that the only other two businesses Plaintiff named at her deposition are owned by others.  Accordingly, Plaintiff has failed to raise a triable issue of fact, and summary judgment in favor of Defendants must be granted on Plaintiff's FLSA claim.

### B. New York State Law Claims

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998).  A district court "may decline to exercise supplemental jurisdiction over a claim . . . [where it] has dismissed all claims over which it has original jurisdiction."  28 U.S.C.A. § 1367(c)(3).  "Courts in the Second Circuit routinely dismiss complaints where the FLSA provided the jurisdictional hook and the rest of plaintiffs' claims arise under state law." *Yang Li*, 2012 WL 1004854, at *5 (collecting cases).  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED; Plaintiff's motion for summary judgment is DENIED; and the Clerk of Court is directed to close the motions at Docket Nos. 39 and 47 and to close the case.

Dated: January 15, 2015
      New York, New York

6

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE